Good morning, Your Honor. May it please the Court, Gary Sowards, along with David Senior and Ann Tria, appearing on behalf of Petitioner Mr. Lewis. We bring this case to the Court, Your Honor, because there is an immediate need for an appeal or mandamus relief in this case to protect important social, judicial, and individual interests that are threatened by forcing a psychotic prisoner to go forward in habeas corpus proceedings without the assistance of counsel. The district court order adopting the recommendations of the magistrate judge has denied both the right to competency and the right to counsel in capital habeas corpus proceedings in contravention of this Court's controlling authority in the Roeham case. An appeal to correct this deprivation of rights meets the very strict requirements of 28 U.S.C. 1291 in view of the importance of the broader rights as well as the very narrow right. Well, you know about our Court's decision in the no-runner case. If we don't view a competency determination as being immediately appealable in the direct criminal appeal context, why would we decide that in this context it would be immediately appealable? I think for several reasons, Your Honor. First of all is the difference in the requirement of proof under 18 U.S.C. 4241 in the pretrial context, which holds that unless there is a preponderance of evidence to demonstrate the incompetency of the client, then the case goes forward. By contrast, what we have here is both the right of competency and the right to counsel, which must be afforded unless the opposite can be shown. But how does that speak to appealability? Well, I think it speaks to appealability in a couple of ways. One is the fact that this then becomes a denial of counsel case. If this case were before the Court with a competent prisoner whom the Court had said, I think you're indigent, but I don't think you're indigent enough for counsel. And so in these capital proceedings, I'm not going to give you counsel. I think this Court would have no question, no problem. Well, how is that different from a direct criminal prosecution? I mean, you have this – if you have an incompetent defendant, you can characterize it as denial of counsel in either context. But here the – unlike the case with a criminal defendant where the burden of proof is on the State, a habeas Petitioner has to carry the burden of proof. And is all that more important to his participation with counsel? But that doesn't really go to the underlying question, and that is whether you can appeal it now. It doesn't mean that it wouldn't ultimately come to the Court and we would see whether the Petitioner met his burden. But it would seem odd indeed to me that if you couldn't appeal such an issue during the actual trial where the evidence is coming in and where your life and liberty at most at risk, that you could, in fact, do it on a habeas. It's almost like you have a lesser standard on the habeas where we're supposed to have a higher standard than you would in the trial court. So maybe you can explain to me what case we would look to, what theory we would look to, to oppose the presence. Sure. And I think the cases that we would look to would be the Will v. Halleck decision in which Mr. Justice Souter described the interest, the interest that inform a court's determination of whether 1291 jurisdiction attaches, so that it's not just the particular individual right that's being violated, but what it implicates on a broader scale. And I think one of the differences between this case and No Runner with respect to 1291 is that in that case, it was a noncapital case. The findings made by the judge and the record, which were undisputed, was that there was no evidence of a major mental illness which substantially impaired the defendant's competency to cooperate with counsel. And to the degree there was evidence in that record, it was susceptible to further development as the trial developed. That was a case-specific situation in which the defendants claimed amnesia according to the court. Well, all of these are case-specific. I mean, one of the difficulties with a competency determination is that competency is not static. Somebody may be competent one day and not competent the following month. And I think that's one of the reasons why we hesitate to permit an immediate appeal as of right, because it seems to be a never-ending process. You can argue that, well, maybe he was competent in January, but by June he's deteriorated, and so we have another whole, whole appeal from that. Correct, Your Honor. And I think the interim triggers reference to Sell v. United States, which is in some ways the obverse of this case, but gets us to the same, the same result. And that is there it's a pretrial defendant in a criminal setting who is subject to an involuntary medication order in the absence of requisite circumstances justifying the order. And what the Supreme Court, through Justice Breyer, explained was that during the trial, during that period of trial, the defendant had a right to be free from that unwarranted medication, which implicated both his individual right and broader constitutional concerns having to do with involuntary medical treatment. In our case, the evidence before the lower court is that, undisputed evidence, is that Mr. Lewis has a serious psychotic disorder, which even under the best of conditions causes him to, it provides him with only illogical, idiosyncratic, odd thought process of no help to his counsel. But that could be potentially corrected with treatment and with medication. Well, appealability can't turn on the facts of the particular case. And I'm not sure that I, there is evidence, I'm not sure, in fact, I am sure the Court didn't make the determinations along the lines you describe. But for the issue of appealability, you really can't say, well, it's going to be appealable if we think the evidence looks like this and not appealable if we think the evidence looks like that. I mean, either you're here on a direct appeal or you're here on mandamus. And I do want to get to the facts of this case, but I'm still adrift as to why it is or what we can define as a rule of law that explains why there's a direct appeal in this context, whereas in the direct criminal context, such as no runner, there's not. And I think the answer, Your Honor, and I appreciate the Court's guidance with respect to other issues, I'm happy to discuss mandamus as it was, as an alternative, but I think the answer is found in Selle, that that was very much a case-specific case. Well, Selle is a medication case. And this is a lack of treatment, an absence of medication case, in light of uncontested, undisputed evidence, which clearly shows the client to be mentally incompetent. But the reason for immediate attention in Selle is that someone is being given medication. He's being affected. I didn't see any allegation in this case that your client is being altered in some chemical or medical way. No. The problem is he's not being altered in some chemical, medical way and forced to proceed in a condition, in an unaltered condition, which deprives him the right of statutory right of counsel. So as I said, it's the obverse in terms of what the factual predicate is in Selle, but it's exactly the same result. Well, are you, have you made motions? Is it your position that your client needs certain medication and treatment and that that would actually put him in a certain position so that he could assist you? That is one of the issues that was raised and reserved in the testimony of Dr. Stewart at the hearing. The first question, though, was whether we get a stay based on a finding of incompetence. The other problem that I think we have is that we don't get a stay based on a finding  The other problem that I think we have is that we don't get a stay based on a finding of incompetence. And have you, so let me understand this, that have you played out this whole issue in the district court with respect to whether he needs certain treatment or he should have certain treatment during his pendency? No, Your Honor, and we have not played it out. And I was just Still kind of on hold? Well, we, in our, my recollection is in our objections to the district court judge, we had emphasized the fact that based on the evidence before the court, without further determination of the efficacy of chemical treatment, this was not a case that could go forward. We did raise that point. And I will take the liberty of giving the court the excerpt of record cite to that. But that was in our objections to the magistrate judge's findings. And a point I believe we also emphasized in our briefing to the magistrate judge, that at the end of the day, the way the case sat down at the evidentiary hearing, and in fact the magistrate judge raised this, whether Mr. Lewis's condition could be corrected with medication. And Dr. Stewart's testimony was he believed that was a possibility. Well, let me, I mean, the court concluded that your client was not incompetent. And so it didn't see the need to go further. Are you telling us that separate and apart from the determination of competence, your client has sought medication or other treatment that has not been made available to him? No. And let me correct the predicate of the Court's question. The district court magistrate judge did not conclude he was not incompetent. He concluded that he could not say he was so incompetent that he had to stay in the proceeding. Well, maybe this gets to the mandamus issue and your most recent 20AJ letter. But it seemed to me that the magistrate judge's report was explicit with regard to what the appropriate standard was. Didn't get the standard wrong, and so ultimately did conclude that your client was competent. Well, actually, it was in light of the recent information in the 20AJ letter that I went back and compared the statement of the correct standard in footnote 6 at Excerpt of Record 13 with his application of that standard, or purported application of that standard at Excerpt of Record 18. And I think it's clear that with due respect to the magistrate judge, he got it wrong. But that is not the case. I wouldn't the language, I understand the language you're pointing out on ER-18. But having in the same order four or five pages before expressly and correctly stated the standard, I think it's a hard sell to say that having stated the standard in so many words, he promptly didn't apply it. Well, and that's a good qualification, stating it in so many words, because even footnote 6 does not exactly show or portend a correct application of that standard. What he says is, he understands from Mason that it's no one's burden, but the court has to find. It's on the court. The court's got to get it right. The court's got to get it right by a preponderance of the evidence. So that seems to me to preclude a determination on his part that, well, I think it's – which is exactly what you had in, I forget the name of the case cited in the It's close. And because the burden is on the equivalent of your client, I'm going to say the motion's denied. We don't have a judge here saying it's close. We have a judge saying, look, there's evidence here and there's evidence here, and it's hard to believe this evidence exists in the same world, but people can be in different conditions at different times and so forth. I read the order carefully, or the findings recommendations, and it seems to me it can only be characterized – I guess this is the order. It can only be characterized as a determination that your client is competent. Yes. And I respectfully disagree, but also on the ground that there was no evidence to support, if that's what the magistrate judge was trying to do. That's another issue. I want us to get to that issue, but it seems to me, at least my take on this, is the order doesn't turn on the burden of proof. Now maybe we get to the evidence issue. In my time remaining, and I beg your pardon, Your Honors, for – That's an important case. Yes. Well, thank you. Thank you very much. Then with respect to the actual underlying evidence, the magistrate judge's recommendations were clearly wrong, putting aside how he ultimately applied what he found. And I think the fundamental flaw is this, that from the beginning of the case, he viewed the opinions of the two mental health experts as being polar opposites. And what Dr. Ponat – And what Dr. Ponat described as the tale of two cities. Exactly right. Tale of two cities. Sometimes he said two experts, sometimes two clients. Couldn't imagine how these could possibly be reconciled. Throughout the testimony of both Dr. Stewart and Dr. Ponat, it was emphasized over and over again, Dr. Ponat explicitly, that they were both looking at the same person with a reconcilable, consistent set of symptoms, wholly consistent with the major psychotic disorder that Dr. Ponat was able to see, amazingly, in two short visits, totaling about an hour and 40 minutes. The only difference, the only thing distinguishing Dr. Ponat's sort of conclusion that, well, he looks good enough to cooperate with counsel, the only thing distinguishing that from Dr. Stewart's conclusion that he was incompetent was, among other things, the fact that Dr. Stewart, unlike Dr. Ponat, actually assessed the functional impact of the mental illness on Mr. Lewis's adjudicatory competency. And he did that in at least three ways. One was through the objective clinical instrument, what we called the MACCAT, the MacArthur Assessment – Competency Assessment Tool for Adjudicatory Competency. That Dr. Ponat didn't perform, although he had no quarrel with it being the leading instrument in the field. The second way Dr. Stewart went about this was to specifically interview Mr. Lewis about his ability to discuss the case, the facts of the case, and most importantly under Rohan, his ability rationally to talk about his social history and found he could not do either. Dr. Ponat said he understood those were of relevance to a competency determination, but using different phrases, I was not interested, I did not pursue that, made it clear that he conducted absolutely no discussion in that regard. The other very important tool that Dr. Stewart had was, in a sense, to observe where the rubber hit the road, to watch Mr. Lewis, in interaction with his attorneys, attempt to discuss the case in a rational and intelligent fashion. Dr. Ponat was explicitly offered that opportunity and declined to do it. And what he would have seen, and this is what's the other amazing congruence, I think, between the two experts, is the information reported as early as January of 2009 in Dr. Stewart's report, where Mr. Lewis would spontaneously launch into this long tangent that no one can make any sense of about how he was hit in the head with a rake in 1977 and 18 years later, his power left while he was lifting weights at San Quentin. This engendered some kind of confusion and the only response he could think of was to stay in his cell for basically 10 years. What was amazing was almost verbatim Dr. Ponat heard and reported exactly that same riff when he interviewed Mr. Lewis. And he described it as a good example, a very good example of the level of communication and rational thought output that Mr. Lewis gives in his best situation, in his absolute best state, when the waxing and waning symptoms of his psychotic disorder have tapered off and all we have is what Dr. Ponat referred to as the residual connections of the frank delusional thought, which is always present. And that's the other point, is that this is a disease that has a psychotic core. It is always there. And the only difference is the extent to which the casual observer will notice it because of what Dr. Ponat agreed were the evanescent sort of emotional mood disorder part of the disease. I think we have your merits argument well in mind. Okay. You've exceeded your time. Okay. Thank you. So I'm going to hear from the State. Thank you very much. May it please the Court. I would like to quote Deputy Attorney General Barton Bowers on behalf of the Warden. The district court's order finding Mr. Lewis to be presently competent is not a final decision on the merits of his habeas petition, and it is not an appealable order. Jurisdiction may be had under Section 1291 only if the order falls within a narrow class of collateral orders, but the Supreme Court has described the kind of power of the collateral order doctrine as a narrow exception with modest scope. The circumstances of this case do not fit within that exception. The no-runner case is very instructive because one consideration is whether the district court's order was conclusive. In this case, there was nothing about it that makes it conclusive. Panetti teaches that every inmate's mental status is subject potentially to change. If Mr. Lewis's status were to change, nothing prevents him from bringing that evidence to the district court. But even if it doesn't change, there's nothing that prevents him from adding additional evidence and bring it to the district court's attention. There is nothing about the district court's order that is conclusive. But more importantly, this issue can and will be revisited on appeal because the right to be competent can be vindicated at that time. No-runner recognized that the Supreme Court has never held that incompetency includes an absolute right not to be tried or that it cannot be effectively reviewed on appeal after conviction. And here, of course, we're on habeas. If incompetency furnishes no absolute right not to be tried, then it cannot furnish an absolute right to avoid habeas proceedings. The Sell case is very different from this case because Sell involved forcing psychotropic medication on an unwilling defendant who was no danger to himself or others. In other words, that was a severe intrusion on that defendant's liberty interests. There is nothing here that demands immediate vindication, because Mr. Lewis, as a death row inmate, has a liberty that has been compromised for 20-plus years in any event. And I would also add that, of course, if and when an execution date is set, the competency issue will be revisited at that time. That competency issue would be different. I mean, that would be competency to be executed. That's true. But that would be different than the competency to assist counsel and to be part of the post-conviction proceedings, correct? Quite correct, yes. Has anything happened in the district court in the meantime since this appeal was filed? Or is the district court sitting and waiting to see what happens here? The district court has maintained jurisdiction over this matter, and unfortunately, the course of litigation is frustratingly slow. But there have been multiple pleadings filed since this order came down. And the district court has indicated its intention to submit some rulings on at least some of Mr. Lewis's claims. And that's another very important point to bring up. Mr. Lewis talks about irreparable harm that he fears if this Court doesn't intervene immediately. And yet, the district court still has jurisdiction over this case. The district court is still making orders on this case. Nothing prevented Mr. Lewis through his attorneys from asking this Court for a stay of the district court appealings. He has never done so. And so that's an indication that the irreparable harm that his attorneys say that he will suffer is not all that real. I take it the case has been or is in the process of being reassigned? It was assigned about a year ago to a different district court judge. Now, I notice that one of the things you argue here is that Rohan, even this whole premise on which we're here, that that's wrongly decided. Is that correct? Yes. But you know that as a three-judge panel, we don't have the ability to overrule a fair case. I do. I would simply reiterate briefly my argument in the briefs, which is that given the Supreme Court's more recent guidance in the Pinholster case, that very much undermines the rationale for Rohan, because Rohan again and again came back to the rationale that there was a possibility that the capital defendant may offer some information in his own private knowledge that could assist his attorneys. But then Pinholster, even if we take your premise as a given, Pinholster didn't absolutely shut the door on any new evidence or any evidence for hearing in habeas cases, did it? It made clear that evidence considered in Federal court that was not presented in State court is irrelevant to merits review under Section 2241. You know, Mr. Lewis had the chance, the opportunity to present whatever evidence he had to the State courts when he was exhausting his claims. In fact, under California law, he had the duty to do that, and yet he never offered any information, such information. Under your theory of Pinholster, if somebody walked into the district court today and said, he's not guilty and I'm guilty and here's the reason I'm guilty, in this case or some other case, and lays it all out, district court has to say, sorry, that wasn't in the State court. I can't even listen to it. I can't send it back to the State court. I just, Pinholster ties me up and we'll have to execute this man. Well, it creates an exhaustion issue at the least. It may form the basis of a new claim. Certainly, Pinholster involved a discourse, a discussion between. What might be a new claim, but the court never quite went there and told us what a new claim is. Correct. But here, of course, we're talking about information in his private possession. And if he had such information to corroborate his claims, he could have and should have presented it to the State courts in the first instance. Turning to Mandamus, Mr. Lewis should not be permitted to use Mandamus as a substitute for the regular appeals process. Mandamus is an ex – is a drastic remedy reserved for extraordinary circumstances, circumstances such as a usurpation of judicial power or a clear abuse of discretion. Again, we have nothing like that in this case. None of the five Bauman factors support Mr. Lewis's contention that he's entitled to Mandamus relief. He has other means, including the direct appeal, to secure the relief that he says he's entitled to. He's not shown that he's going to suffer damage that's not correctable on appeal. And finally, the district court's order was not clearly erroneous as a matter of law. I would like to take the opportunity to discuss some of the timeline that's happened in this case, because this case went on for a very long time. And Mr. Senior was appointed first in May of 2002. In March 2003 was when Dr. Stewart first examined Mr. Lewis on two separate occasions. And also that's when the first petition was filed. In September of 03 was when this Court handed down the Rohan decision. And at that time, there was no complaint or assertion that Mr. Lewis was incompetent to assist his attorneys. Another year went by, December of 04, Mr. Lewis filed an amended petition. And yet here we are discussing this order, which was the result of a motion that was filed in January 2009, that Mr. Lewis, through his attorneys for the first time, complained that he was incompetent to assist his attorneys. And a lot happened in the meantime. I mean, not just the Rohan decision, but his attorneys had been working with him for years. And so this is something I think the Court can and should keep clearly in mind when it evaluates the evidence in this case. When you're looking at it under clear error, you must ask whether the district court's resolution was plausible in light of all evidence in the record. Here it clearly was. Because Dr. Ponath's opinion and his testimony provide a clear basis for the district court's decision for all the reasons identified by the district court. Mr. Lewis displayed, in fact, the ability to understand his position. He knew he's on death row. He still does. He understood he was being assisted by attorneys. He was able to identify them and his paralegals and multiple attorneys that he's had through the State and Federal appeals and habeas process. The district court also considered the fact that Mr. Lewis testified at trial. And Dr. Stewart, among other opinions, has expressed his opinion that Mr. Lewis was possibly even more incompetent, even more debilitated at the time of trial. So I urge this Court to look at his testimony at trial, and not just the snippets that were provided in the excerpts, but all 100 pages where Mr. Lewis, through direct exam and cross-exam, was quite responsive to the questioning by the attorneys. The district court also discussed the fact that Mr. Lewis, although he showed some problems on a portion of the MACCAT test, did show some improvement over the course of repeated administrations. And that improvement had to do with one of the more important, I would say, aspects of this, which was the reasoning aspect. But in any event, Mr. Lewis has displayed the ability to speak with his attorneys, the ability to comprehend his position. And Dr. Ponath testified that he was able to question him, and he was able to get responsive answers. And even when he meandered and got off topic through repeated, insistent questioning, he was able to get him back on topic. And so when you look at all the evidence, I think under the clear error standard, this lower court's decision must be upheld. But our position is that Mr. Lewis has not met the criteria for mandamus relief or for the collateral order doctrine, and I'll make my final pitch in that regard. The Supreme Court has stated that the final judgment rule itself promotes efficient judicial administration. And it also emphasizes the deference that the reviewing courts owe to the district courts' many determinations of fact and law that arise in the course of litigation before final judgment. Mr. Lewis hasn't shown entitlement to exceptional relief, and we ask that this Court dismiss the appeal on the grounds of lack of jurisdiction. I'm happy to take any other questions from the Court otherwise. The Warden is willing to submit. Thank you. Thank you. Roberts, you used up your time, but I'm going to give you a minute for rebuttal. I appreciate that very much, Your Honor. The only point I would like to correct that has continued here is the notion that the district court correctly found improvement on the MACCAT. The Court has mentioned it's familiar with my merits argument. I would just underscore that the most critical determination of the MACCAT of his Mr. Lewis's ongoing incompetency was never considered by the district court and never mentioned, and it is, frankly, clear error, erroneous and misleading for either the state or the district court to suggest that there was perceptible or sufficient improvement on the MACCAT that is an indication of restored competency. That simply is not true. And that's also consistent with the United States Supreme Court's recognition in Indiana v. Edwards that the MacArthur Foundation's development of this tool is widely recognized as identifying the most critical factors having to do with competency, and the most important of those three factors, the appreciation factor, was the one in which Mr. Lewis was always most significantly impaired. Thank you very much. Thank you. I'd like to thank both counsels for very helpful arguments. The case of Lewis v. Ayers is submitted.
judges: McKeown, Clifton, Bybee